Montgomery v. Winn-Dixie All righty, the last case of the morning is Ferriero v. Winn-Dixie, case number 18-30302 and we'll hear from Mr. Clayton when you're ready. Thank you, Your Honors. May it please the Court, I'm Ben Clayton and I'm representing the appellants in this case. You've heard a lot of food cases before, the jurisprudence is very lengthy on this. I don't want to characterize any of the issues in this case as being unimportant, but I want to prioritize and I want to go to the issue that I think really begs to be discussed more than anything else. I don't know how many issues we'll get to. The central issue is this, the district court concluded that summary judgment was appropriate because the district court felt that the plaintiffs needed to show one or more specific acts of negligence. The district court concluded that no specific act or acts of negligence had been shown, therefore the summary judgment was appropriate. The thing is that showing a specific act or acts is consistent with Article 2315 of the Civil Code and the duty risk analysis, but it's not the exclusive means of showing fault in a food poisoning or a deleterious food case. We might be able to argue about whether or not renovation still exists as one of those means, and we'll talk about that or I propose to talk about that. But plainly, res ipsa loquitur and failure to warn and duty to warn still survive after the Porteus case. So the first thing I want to talk about briefly is the Porteus v. St. Ann Cafe and Delicatessen case, which is a 1998 Louisiana Supreme Court case. And without being like one of the authors of a treatise or something, I'm not going to go into the long history, but the cases do this marvelous job of talking about going back to 1911 and the Doyle case and the McGavin case and this case and that case. And so our long history in our jurisprudence is that we have sometimes used civilian legal concepts to analyze bad food or allegedly bad food. Sometimes we adopt concepts from the common law. Sometimes we mix them together. Sometimes we talk about the foreign versus natural distinction. Well, as I recall it, the grocery store says that you didn't plead any of these others. You didn't plead res ipsa or failure to warn or retribution. Thanks for asking that. You guessed what one of my next things was. Res ipsa is a subset of negligence, the law of negligence. Res ipsa speaks for itself, right? Exactly. The thing speaks for itself. And, of course, the trier of fact is supposed to decide, well, does it or does it not? And that's one of our points here, that there should be a jury trial and a jury should be able to decide if it does or doesn't speak for itself. But res ipsa loquitur and duty to warn or failure to warn are subsets of the law of negligence of Article 2315 of the Code of Civil Procedure. Negligence in 2315 plainly were pled in the original complaint and in the two supplemental complaints. So those issues are alive and well. And with all due respect to the district court, the plaintiffs here didn't have to show a specific cause. They might eventually, given the opportunity to complete discovery, which was never allowed, if discovery were completed, they might be able to show to the satisfaction of a judge or a jury that there was a particular act of negligence, but the facts that are of record already at least strongly suggest res ipsa loquitur. So the narrow, the specific holding of the district court in dismissing the summary judgment, in using summary judgment to dismiss the case, was no showing of a particular act or acts of negligence. And that's not what the law requires. The law also allows res ipsa and allows duty to warn as other means of showing fault. So part of the problem I see in Porteus is it may or may not have gotten rid of all the redhibition cases. But even if it got rid of all the redhibition cases in the food, food, deleterious food law category, there's still 2315 ordinary negligence and duty risk. There's still res ipsa. There's still the duty to warn. So if you go to the Porteus case and you look at a footnote, this is where I think a bit of uncertainty comes in. In footnote number 1, the Louisiana Supreme Court said two other areas of substantive law that arguably could apply in this case were the sales and obligation articles on breach of contract and the sales articles on redhibition that goes on to cite some cases. Then later on in the footnote, it simply says, this court, however, finds that the duty risk toward analysis in Louisiana negligence law is the proper analysis for this type of case. The problem and the ambiguity is there are various subsets of food cases within the general rubric of a food case. So the Supreme Court didn't really define what type of case they were talking about because this particular case involved a broken tooth resulting from a foreign object in a shrimp po' boy, which is a little different from some of the other cases that talk about pearls in oyster po' boys, some other cases that talk about vibrio volnificus infecting people and hurting or killing people, other cases where food is served prepared and served in a restaurant, which is another type of food case, cases where food is prepackaged, which the appellees have talked about. They've talked about a pudding or a jello case and a butter case or a margarine case. Those are yet a different category. Let me just put the facts as I understand them before you, which were that the company bought prepackaged cooked shrimp, I mean crabs, right? Not prepackaged. Well. Whole fresh crabs. I understand, but they were cooked, right? They were cooked. And I thought they came in some kind of container and then they were dumped into the case, the display case, on ice. Now we're getting down to the facts of the case. Well, that's what summary judgment is about, isn't it? Exactly. And then we're talking about credibility because now we have to talk about the deposition of the store manager, of the lady whose deposition I took, and she at first was rather certain of her testimony, and she said, well, our procedures in the seafood department of that Winn-Dixie on Pontchartrain Drive in Slidell were this, this, and this, and that's what they were, and they were followed. But the more I questioned her, the more uncertain she became and the less dogmatic she became about what the procedures were and whether they were followed and where the records were and whether the records still existed. There's also the unresolved fact question, not ripe for adjudication on summary judgment because it requires a credibility determination, about a warning or not. You've got Ronald Ferrier and you've got... Nobody has to warn anybody about defective seafood, right? I mean, maybe a person from Kansas who's not had seafood before, but Louisianians like Gulf Coast Texans know about the risks of inheriting seafood. Well, I think that's a good question for a jury. There's a good argument that living in Louisiana is probably not good for you for a lot of reasons, but be that as it may. Driving over alligators, which I've done, but in any event. What would the warning have said? I mean, anyway. A bit of a red herring, I think, the Winn-Dixies brought that up because they didn't put a warning. So, again, something that I think a jury should have had an opportunity to evaluate. One could infer from the circumstances. What is there about the evidence when you say that the lady's testimony got more and more vague or inconsistent? I mean, my understanding was that they had a thermometer in the seafood case and they checked it three times a day. She said that that was their procedure, but then eventually the more you questioned her, it became clear that she couldn't really be so sure that they had followed all their procedures and that they hadn't followed their procedures in this particular situation. Well, that I understand. And, of course, you know, your client, it was probably two or three years after the fact when you deposed the woman, right? Well, and then one of the complicating factors is that Evangeline Smith was my client initially and she was elderly and she was already infirm and she was already on kidney dialysis and then she died, unbeknownst to me, about a month after I filed the complaint. Didn't know why I wasn't hearing from her, why I wasn't getting responses to my communications. Eventually found out, well, because she can't respond, she's not with us anymore. Then it took about four months or so to actually find out who were the proper... It was a hullabaloo. You know, the right party's plaintiff in. I couldn't do anything with the case for four months. Right. I understand all that. But the evidence you have, as I understand it, is the deposition of this one store manager or managerial employee, right? The one I took of them. But they also took Keoka Smith, that's an adult daughter. Plaintiff. I mean, yeah, the family... She's one of the plaintiffs. And Ronald Faria, who is an adult grandson of the deceased Evangeline. Right, but it doesn't matter, because what we're talking about is the negligence of the store. And did you have any evidence that it's not safe? Let's assume each crab was individually laid on top of ice. Do you have any evidence that that's an unsafe practice? We don't have any evidence that that's an unsafe practice, but we have evidence that they went in, they bought the crabs, they were wrapped up. That makes Winn-Dixie a manufacturer. Well, they were wrapped up... Packaged. When they were sold. When they were sold, which makes them tantamount to a manufacturer, which is another ball of wax. Then you get into retribution. Does retribution exist or not? So it's the first Friday in June. My now-deceased original client goes in with her family members, buys, says, I'll take six of those crabs there. They're on ice, but just because they're on ice doesn't mean that they're necessarily sound or healthy, because there's another case in here, I could pull it out if you want, where Winn-Dixie said, well, yeah, we had a freezer or a cooler that went bad. We put it on ice and the seafood was bad. So the mere fact of putting something on ice doesn't mean that the food is healthy. So they buy it, they take it home. It's about a ten-minute ride at most back to the house, the apartment. Immediately unwrap it. Immediately, Evangeline, now deceased, goes to make a gumbo with it. She takes a bite. She takes a smell and she says, this is nasty. This is terrible. And she had ingested some of it. And so they immediately... That's a res ipsa or at least potentially a res ipsa case. I think a jury should be able to decide that. So I could go into a big paper trail here about all the cases. What's your best case for having that amount of evidence go to a jury? I'm sorry, I'm not sure I understand. To help us with our research, what is your best case under Louisiana law for saying that this situation should go to the jury? Poplar v. Dillard's Department Stores, Inc., 5th Circuit, Louisiana, 864 Southern 2nd, 789, which discusses res ipsa in the context of a food case. Dillard's? Dillard's. Known for clothing, but they had a cafeteria, that sort of thing. You wouldn't think food, you would think clothes or shoes. Right. In any event, and I could go on, I could talk about Lee v. Church's fried chicken. It's a 1981 Louisiana 1st Circuit case, and it talks about retribution. And if retribution survives as a food case, as a means of analyzing a food case, then obviously the plaintiff doesn't even have to show a specific defect, doesn't have to show any specific... Why don't you sum up, what is the fundamental error briefly stated that the district court made? Concluding that the plaintiffs had to show a specific act or acts of negligence on the part of Winn-Dixie. And thereby completely ignoring the potential application of res ipsa loquitur or duty to warn. Which it did not address. I'm sorry? Which it did not address. It was addressed at the district court level. Beg your pardon? At the district court level, through the cases that we cited, because we cited Lee v. Church's. Res ipsa was not, is what you're saying, by the district court. She didn't. Oh, no, she didn't, but we did. In our briefing to the district court. But the district court didn't discuss that. The other issue is also about, okay, so it's November and I finally got live clients and we can start doing discovery again and we do some discovery. And then Winn-Dixie sought an extension of the discovery deadline. There was no objection. We consented to that. They were given two weeks less of an extension than they looked for. And before the conclusion of discovery, then Winn-Dixie belatedly filed a motion for summary judgment. So there's an incongruity there between the extension, filing a motion for summary judgment while there's still discovery ongoing, but then there's also a deadline for filing the motion for summary judgment. There's been the suggestion that my clients weren't diligent in pursuing discovery. But if you take a look at Colwell v. City of Fort Worth and compare its facts, you see some plaintiffs who were less diligent, less prompt than my clients were in doing their discovery. And the court said it was acceptable that they were reasonably diligent. So we did make a Rule 56D request for additional discovery, which was not honored. All right, sir. Thank you. All right, you have time for rebuttal. Mr. Bourgeois or Burgess? Bourgeois. Bourgeois. Good morning, Your Honors. Thank you for hearing us late on this morning. But I just wanted to address two of the issues you raised, Judge Jones, of my opposing counsel. And the first one was you didn't plead those, and this is specifically the failure to warn theory, the res ipsa theory, and the redhibition theory. Well, you're absolutely right, Your Honor. When you look at the complaint, you will see a negligence action. There's no failure to warn. There's no res ipsa. There's no redhibition claim. Now, when this went on motion for summary judgment, that's not even in the opposition to the summary judgment, at least as far as the res ipsa and the redhibition claim. He did argue a failure to warn theory in the opposition. And when Judge Vance considered this, she noted, you didn't plead a failure to warn theory, but I'll address it anyway. The reason why she didn't address the res ipsa and the redhibition claim is because they were never raised before in the trial court. This is the first time we're seeing it here. He said he cited Church's chicken case. He did? I'm not sure when he cited that case. It's clear from the record. And mind you, this is 36 days before trial when the opposition is filed. It's apparent in the pleadings that he's proceeding on a theory of negligence. If he wanted to raise res ipsa or another theory, he certainly could have done it in opposition. He could have even filed a motion for new trial after he got a ruling where the court said, yours is a negligence claim, I'm going to consider it under negligence law. And second of all, Judge Jones, you asked, did this come in containers? And you're absolutely right. The crab was delivered precooked. You said the district court said this is a negligence claim and not going to cite it on that basis? Yes, Judge Jolly. When you look at Judge Vance's opinion, she's looking at the petitions. She announced that. No, she didn't announce it. It wasn't for oral argument. It's in the ruling. It addresses the negligence claim and goes through the law as it applies to negligence. And was there any response from the plaintiff with respect to the limitations of her opinion at that time? At that time, no. At that time, we're limited to the opposition that plaintiff filed in response to our motion for summary judgment. When did the plaintiff first raise to the district court, specifically the race epsa and renovation claim? Judge Jolly, he never addressed those issues to the district court. They're first time on appeal. They appear in his appellate brief. You were asking a question about the condition of the crabs, and yes. The record evidence supports, and he's speaking about Ms. DeLuise, who is a Winn-Dixie manager who testified that they would have received the crabs from one of two cellars. They would have immediately looked at them. They would have immediately put them in refrigeration. They would have put them on ice. And as you said, there were thermometers in the refrigerated case which were checked three times a day. So this isn't a case where Winn-Dixie is manufacturing anything. Ms. Smith picked out six crabs. Winn-Dixie wrapped it up in paper, presumably to weigh it, and she checked out. So there's no packaging here, and that's relevant. The crabs were not cooked? Judge Dennis? They were not cooked? They were cooked. They were pre-cooked. They were delivered to the store already boiled and were kept under, as the evidence shows, kept under temperature and cooling. Even the plaintiffs testified they selected the crabs while they were sitting on ice in a refrigerated container. Your Honors, I just want to bring this all back to the fact that trial, this motion for summary judgment is filed on the eve of trial. The motion for summary judgment was filed on January 30th. The trial is March 12th. The opposition was filed February 6th. This is 34 days away from trial. It's nine days before the close of discovery, of which plaintiff is knowledgeable, the trial date, the cutoff of discovery. At the time the motion for summary judgment was decided, and as Judge Vance notices, discovery is complete and closed. There is no discovery. Plaintiff never moved for a continuance of the trial date. There is no motion to compel. There's no pending deposition notice. There's nothing. Plaintiff is content. This case is ready to go for trial. So this case is in the perfect posture for a Rule 56 motion for summary judgment. As this Court noted in its little case by the per curiam decision, you know, motion for summary judgment is exactly that. It's designed to test the case before we proceed to trial. Everything is fixed here. Discovery is closed. Plaintiff is confident with the theories that's pleaded in its three petitions, in its complaints. When Dixie makes a showing, look, based upon the evidence we know, you can't prove your case at trial. It becomes incumbent then upon plaintiff to demonstrate with evidence that he can present his case in a disputed material issue of fact to the jury in this case. So what evidence do we have in the record? That's my question. The evidence we have in the record is the evidence in opposition to our motion for summary judgment. And we go through that in our brief. The evidence submitted in opposition is basically in two forms. It's personal depositions of the plaintiffs or their statements saying that they purchased crabs and my mother got sick. And we have a doctor's opinion saying she had this bacteria in her bloodstream, so I'm presuming it comes from the crabs that they purchased from Winn-Dixie. None of this talks about Winn-Dixie's conduct. None of this talks about what Winn-Dixie did to breach its duty of reasonableness, which the Porteous Court addressed is the burden in this case. None of this goes to Winn-Dixie. They are content to rely upon older pre-Porteous cases, which allowed an inference in food poisoning cases. But along comes 1998 and the Porteous decision in Louisiana Supreme Court by Judge Caligaro, Justice Caligaro. That case definitively addresses it. It says these cases ring in pure negligence. And under Louisiana law in Article 2315, you have to establish all your elements of a negligence claim. What is the duty? What is the breach of duty? Is there causation? Are there damages? Is this legal causation? Okay, well, the duty, we know the duty because Porteous says it. You have to act reasonably. And Porteous actually talks about what is reasonableness because the question there were oysters, which, like in this case, similarly were delivered pre-shucked and pre-washed. The plaintiff bit into a pearl in an oyster in Porteous. The Supreme Court said the restaurant did all that it could possibly do. It felt the oysters. It looked at them when it got them. They looked clean and washed. It felt them as they were frying them. It didn't have a duty to dissect each and every oyster to find a pearl. I think that case directly transfers to this case. And it's the same thing, only we have an invisible bacteria in this case. And the evidence establishes, and I'm going to go back to what plaintiffs said. There's no evidence about the fact whether the Eremonis hydrophilia is a stinky bacteria? There's nothing in the record. Causes an off smell or anything? There's nothing in the record as to that. There's the doctor's testimony that this is a bacteria, and it was noted in her bloodstream. But what's interesting and what is in the record is plaintiff's opposition evidence. And I want to get back to that because he quotes to Ms. DeLuise, who is from Winn-Dixie. We know what her testimony is going to be, and that's partially while we move for summary judgment. And what does Ms. DeLuise say? Ms. DeLuise, aside from their attempting to say that her testimony is equivocal on certain things, there's things that she says which are undisputed. They're coming from the plaintiff's opposition, and that's Judge Jones as you say. We had procedures in place. We got the crabs. We immediately inspected them. We would have rejected them if they didn't look fresh and wholesome. We didn't do that. I would know about it if we did it because I'm the manager. What happens after that? We immediately put them either on storage or on display on ice in a refrigerated container. That container has a thermometer. It's monitored at least three times a day. That's the evidence we have. Now, what does that evidence show? Winn-Dixie is entirely reasonable. There is an absence. There's no evidence that Winn-Dixie did anything in this case to breach its duty of reasonableness. And that's what Judge Vance is ruling in this case. There's simply no evidence to meet your claim. This is perfect for summary judgment. And I want to move on to the failure to warn claim because she does address that because it was raised in the opposition. And what she says about that in her opinion is she says, First, you never pleaded it, but I'll consider it. She cites to the Simeon case, which is a Louisiana Supreme Court decision. It's pretty courteous, but it's a Supreme Court decision. And it says in order to avail yourself of that theory, you have to prove that Winn-Dixie knew or should have known about this. And there's just no evidence in the record that either Winn-Dixie knew or that it should or could have known about an invisible bacteria. The only thing I'll say about that is that as a shopper at the grocery store myself, I notice that much of the prepackaged semi-cooked food in the grocery store comes with warnings of one sort or another, you know, do not leave out on the counter, cook within two days, that kind of thing. Yes, Your Honor, and there's actually evidence of that in this case because in reply to that opposition, if you look at page 546 of the record, you're going to see the warnings that were in place if crabs were sold on the day that they were, which is a disputed issue. I mean, that was something that came out on the tab. One is on the tab that would have been applied to the crabs, and the other one is a giant sign in front of the seafood container saying, Warning, if you're immunocompromised, you should use caution in consuming seafood. And it's undisputed in this case not only that the Aeromonas bacteria is extremely rare by Dr. Powers, playing his own doctor, it's also undisputed by both doctors that, unfortunately, Mrs. Smith is very immunocompromised. She's got a laundry list of conditions which is outlined in the brief and no disrespect to her in any way, but she's been undergoing dialysis for decades. She's in an immunocompromised state, and I certainly don't want to diminish anyone in this lawsuit, but she fits that category, unfortunately, of someone who is susceptible to this virus. Where she got it is never really settled in this case. Our expert is saying she wouldn't have gotten it from a crab. She most likely got it from dialysis. So the court talks about the duty to warn, and as I said, it's not pled, but under the Simian case, you have to show that they knew or should have known, and there's no evidence of that. And third of all, there is actually a warning here. The only undisputed evidence is that it's there. But, you know, Judge Vance goes even further and says they're not explaining what type of warning should have been there, what should have been done. It's just not there. Now, as to the res ipsa claims and the redhibition claims, those just aren't there. They're not pleaded. They were never raised in the trial court. That's why Judge Vance couldn't discuss them. We've discussed them in the brief while they can't apply here, but, frankly, we think they're waived. Now, moving on to the second half of the appeal, questions the judge's discretion, and this is an abuse of discretion part of the appeal, to refuse a Rule 56D motion for additional discovery. I want to note again that trial is 36 days away when this opposition is filed. Well, the more pertinent, I suppose, is it wasn't clear to me from the briefs how much discovery had been done, and I don't recall what was the, after he ascertained who the plaintiffs were, what was the timeframe between that certainty and the scheduled trial date? Your Honor, I hope I can answer all of that. Was there enough time to complete discovery? It seemed like a fairly prompt trial date to me. The trial date was prompt, but plaintiff is cognizant of the trial date and the discovery cutoff date, which is eight days after it filed its opposition. Now, you should note, judges, that there is a motion to continue discovery in this case, and that motion was filed by Winn-Dixie. It was not filed by the plaintiffs. It's true, it's uncontested, but that motion was filed by Winn-Dixie. We don't have a motion to continue discovery in this case by plaintiffs. We don't have a motion to compel any discovery. Now, with regards to your question about how much discovery was done, I think quite a lot, Your Honors. I think they were content to rely upon their theory. When you look at his opposition evidence alone, it's 14 items of evidence, including four depositions, a recorded statement, a doctor's opinion, a doctor's deposition, medical records, the plaintiff's depositions, the plaintiffs. So, you know, there's no surprise here, but trial is coming up. And that's why the trial court denied the Rule 56d motion. She's cognizant of her trial calendar. She notes that the first time this is ever raised is in the opposition to Winn-Dixie's motion for summary judgment. There is no motion to compel in the record. She cites the jacked-up case from this court with analogous facts saying, well, perhaps you could have been more diligent, but, you know, as it is, it's within the trial court's discretion to disallow additional discovery and to make that ruling right now. The trial court's absolutely clear. We're days away from trial. Discovery is closed. The trial court had already granted an extension of the discovery deadline, which had passed. There is no pending motion to compel. And the plaintiff has cited the Caldwell case, but that case is radically different. We're arguing that jacked-up Six Flags and Walters are more equivalent. In the Caldwell case, they had made the request for motion two months before the discovery cutoff deadline, and a pleading, their 56b pleading, was rejected by the Texas court because it was presumably filed by a law firm and not an attorney. So it was never considered two months before when it should have. And when the trial actually got around to considering it, she says, you're out of time. It's done. They were diligent in that case. This is two months before discovery deadline. Here, the first time it appears is 36 days away from trial and in response to an opposition for a motion for summary judgment. When you look, I have to also mention they're referring to an informal e-mail amongst counsel that was circulated after the filing of the opposition saying, we may want more information. And so they raised this in opposition, and there were two issues, the temperature of the cooler and surveillance videos. And so the trial court indulged them and said, I'm going to consider those and show you why they're not material facts which would present summary judgment. First of all, she talks about the temperature deposition. There is evidence in the record about temperature, and I've been through it again. I won't repeat it. There's no notice of deposition. There's no motion to compel. The trial court is aware that there's this informal e-mail where Winn-Dixie indicated, if we have documents responsive to that, we will get back to you. But as you noted, this is two years ago. The documents had been destroyed. There's nothing more there. But there is record evidence offered by the plaintiffs that temperature is not an issue. The plaintiffs even testified that they saw these crabs. They didn't see anything wrong. They were sitting on ice when they purchased them. Ms. DeLuise testifies that we have procedures in effect. We look at it. We would reject it if not. It's monitored. There's no evidence in the record, I must also add, that any other person suffered any such injury at Winn-Dixie. And of the Porteus and other cases we're citing, I believe it was Hairston, that weighs in favor of our finding, and there's simply no record evidence on that. Now, as to the surveillance issue, all surveillance would have shown is people at most purchasing the seafood before the sand. The judge said this is not going to create a disputed issue of fact. Ms. DeLuise testified it's used for shoplifting, for accidents. We immediately access it. Other than that, it's recorded over. We just don't have it. Finally, Your Honors, we filed a cross-motion for appeal in this case on the issue of costs. We did move for costs in the motion for summary judgment. When the judgment came down, it didn't mention costs whatsoever. It didn't instruct us to file a petition for costs. Approximately what would the costs be here? Well, we're not seeking attorney's fees in this case, Your Honor. The only costs we're seeking are the costs we are entitled to, and that would be clerk and marshal fees, printed electronic copies, fees and disbursements for printing and witnesses, fees for docketing. How much money? We never had the chance to present that before the district court. That's why we're simply asking for a remand. How much money, approximately? I can't give you a ballpark. $5,000, $1,000? I can do a post-argument brief if you like. Well, I just wondered if this is— I imagine it's not $10,000. It may get into the thousands. We have experts here who we had to depose and pay their fees with deposition costs. It's not just filing fees here. We had to prepare for trial. We're 36 days out for trial. The case law from this circuit— I thought costs were more ministerial. They aren't costs of trial preparation, right? The way I'm reading the case is, Your Honor, is that costs to legitimately prepare for trial, including deposition costs and other costs—of course we wouldn't seek anything that's going to get— Well, I know that. Well, I just wondered because this is not a commonly raised issue, and why should we spend our time on something if it's only a couple thousand dollars? You're right, Your Honor, but we were— Just theoretically. We just noticed in all of the case law from this circuit saying that costs are presumed in favor of the winning party. It's in the nature of a sanction. And, unfortunately, the trial court never got to pass on that issue, so the only thing we would request—we ask you to affirm the judgment in all respects. Right. Otherwise, just simply remand so that the court can consider a cost. Okay, you have a red light. Thank you. Thank you. Okay, Mr. Clayton. Very briefly stated on the cost issue, the motion for summary judgment is regarding claims cost or remedy, not a claim. This has been briefed. I don't want to waste time talking about the cost issue, but I'll just hit that with a lick and a promise. What I will mention is that when Dixie is presupposing that because crabs have been cooked and put on ice, that that ensures their wholesomeness and fit for human consumption, that's an argument without any supporting evidence, and, again, something maybe a jury should think about or consider. In any event, also, by making—there was a suggestion that, well, the plaintiff wasn't trying to get a trial continuance. Would there be any significance to you, to your case, to the fact that there were no other claims of any kind arising from this particular packaged crab? If there were no other claims? If there were no other— I don't think it's dispositive. No other injury. I think it could perhaps be admitted as evidence, but I don't think it's dispositive on the issue. That's what I think. Did they comply with the local rules of the Eastern District, motions for taxing costs be filed within 35 days of receipt of judgment? Do you know? I don't have a cap or tabulation. Okay. We can look it in the record. I'm sorry. That's all right. I don't know about that. Okay. But as for the assertion that, well, the plaintiff was happy to go to trial and didn't want any more discovery, that's just not so. The Rule 56D declaration was saying we need more discovery and we're not ready for trial. But, again, that's been briefed. What I really want to talk about is this. Lee was a redhibition case, the fried chicken case. It was cited at 213 and 214 pages of the record in the opposition when Dixie was under Lee a manufacturer and under Prejean and Chevron USA v. A.K.E. or A.K.E.R. or A.K.E.R. Maritime. The defendants also argued that Porteous got rid of Ray Sipsa in food cases. That's not true. Poplar v. Dillard's, which we already discussed, which was a 2003 case coming after Porteous, showed that Ray Sipsa was still alive and well. When Dixie also said that the Krabs had a warning that's undisputed, that is definitely disputed. Ronald Ferrier disputed that. Keoka Smith disputed that. Their testimony is found at pages 224, 311, and 312 of the record on appeal. So there is an unresolved credibility and fact issue about whether or not there was a warning at all, not to mention its adequacy. So that's unresolved, and summary judgment is not ripe on that issue. The trial court also did not require, or the court, does not require that there be a motion to compel to show due diligence, and, of course, that hearkens to the Hinojosa case that's been discussed. Hinojosa discusses three elements to satisfy Rule 56D, and the plaintiff has satisfied all three of those. Thank you. All right, sir.  The court will be in recess until 9 p.m.